

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

XAVIER JAMMAL PINCKNEY,

    Petitioner,

v.

    Civil Action No. 2:15cv276

HAROLD W. CLARKE,
*Director of the Virginia Department of Corrections,*

    Respondent.

## MEMORANDUM OPINION AND ORDER

*By removing youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult—these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender. That contravenes Graham's (and also Roper's) foundational principle:* **that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.**

*See Miller v. Alabama*, 132 S. Ct. 2455, 2466 (2012) (emphasis added).

## OVERVIEW

Before the Court is a Petition from Xavier Jammal Pinckney ("Petitioner" or "Mr. Pinckney") for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1), and a Motion to Dismiss (ECF No. 13) advanced by Respondent Harold W. Clarke ("Respondent" or "Mr. Clarke"). Mr. Pinckney argues that his sentence of four consecutive terms of life imprisonment without parole for the homicide offenses he committed as a juvenile is contrary to, and an unreasonable application of, federal law as established by the United States Supreme Court's holdings in *Miller v. Alabama*, 132 S. Ct. 2455 (2012) and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). For the following reasons, Mr. Pinckney's Petition (ECF No. 1) and Respondent's Motion to Dismiss (ECF No. 13) are **DENIED IN PART** and **GRANTED IN PART**.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2009, Mr. Pinckney was convicted by a Virginia state court of four counts of capital murder, one count of robbery, two counts of using or displaying a firearm in the commission of a murder, and one count of using or displaying a firearm in the commission of a robbery. Mr. Pinckney was seventeen years old when he committed these offenses. On February 19, 2010, Mr. Pinckney was sentenced to four consecutive terms of life imprisonment without parole for the capital murder offenses, plus eighteen years of incarceration for the other four counts. Because these offenses were committed in 2008, he is ineligible for parole. Va. Code Ann. § 53.1-165.1 (2014) ("Any person sentenced to a term of incarceration for a felony offense committed on or after January 1, 1995, shall not be eligible for parole upon that offense.").

Mr. Pinckney appealed to the Court of Appeals for Virginia, which affirmed the trial court's denial of his motion to suppress statements Mr. Pinckney had made to the police. *Pinckney v. Commonwealth*, No. 0902-10-4 (Va. Ct. App. Feb. 28, 2012). On June 21, 2012, the Supreme Court of Virginia refused Mr. Pinckney's petition for appeal. That court later denied his petition for rehearing on September 25, 2012.

On September 24, 2013, Mr. Pinckney filed a petition for habeas corpus in Virginia state court. Mr. Pinckney claimed that he should be re-sentenced on his capital murder convictions following the United States Supreme Court's decision in *Miller v. Alabama*, 132 S. Ct. 2455 (2012) (holding that mandatory life imprisonment without parole for those who were under the age of eighteen at the time of their crimes violates the prohibition on cruel and unusual punishment established by the Eighth Amendment to the United States Constitution).

The state court considered and rejected Mr. Pinckney's habeas petition. In so ruling, the court noted that Mr. Pinckney's underlying conviction became final on September 25, 2012, the date that the Supreme Court of Virginia refused his petition for a rehearing. *Miller* was decided three months earlier, and the court concluded that the potential application of *Miller* to Mr. Pinckney's case did not present an issue of retroactivity. The court also concluded that *Miller* did not provide relief because Virginia's statutory sentencing scheme did not mandate life in prison for juveniles convicted of capital murder.[1] The state court reasoned that the trial court's imposition of multiple life sentences did not run afoul of *Miller* because the trial court considered "Pinckney's age, the circumstances of the crime, his criminal history, . . . his mitigating evidence," and the presentence report. ECF No. 2 at 5-6.

On March 24, 2015, the Supreme Court of Virginia refused Mr. Pinckney's petition for appeal. *Pinckney v. Mathena*, Record No. 140995 (Mar. 24, 2015). Following his state habeas proceedings, Mr. Pinckney timely filed the instant § 2254 petition before this Court. Mr. Pinckney renews the claim presented in his state habeas petition, asserting that he should be resentenced pursuant to the Supreme Court's ruling in *Miller*. Mr. Pinckney argues that his sentences of mandatory life imprisonment without parole for capital murders committed when he was a juvenile were imposed without the trial court considering factors pertinent to his youth, and therefore constituted cruel and unusual punishment in violation of the Eighth Amendment.

Mr. Pinckney's § 2254 petition was referred to a United States Magistrate Judge for disposition. In a Report and Recommendation (ECF No. 18), the Magistrate Judge

---

[1] The state court offered two reasons for its conclusion that Virginia did not impose mandatory life imprisonment without parole in violation of *Miller*. First, the court found that Virginia courts are vested with "wide discretion" to suspend all or part of a sentence, unless the statute specifies that there is a "mandatory minimum" penalty for a particular offense. Second, the court concluded that the statute at issue in Mr. Pinckney's case, Va. Code Ann. § 18.2-31, did not refer to a "mandatory minimum" penalty, so the trial court had discretion to suspend all or part of Mr. Pinckney's life sentence if mitigating evidence so warranted.

3

recommended granting Respondent's Motion to Dismiss, denying the Petition, and dismissing it with prejudice.

In reviewing a Report and Recommendation, this Court "may accept, reject, or modify, in whole or part, the findings or recommendations" made by the Magistrate Judge. 28 U.S.C. § 636(b)(1) (2009); *accord* Fed. R. Civ. P. 72(b)(3). If a party makes timely written objections to a Magistrate Judge's findings and recommendations, this Court must review *de novo* "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *accord* Fed. R. Civ. P. 72(b)(3).

The parties were advised of their right to file written objections to the Report and Recommendation. The Court received objections from Mr. Pinckney (ECF No. 19) and a Response to the Objections (ECF No. 20) from Respondent. After the objections were filed, the United States Supreme Court issued its decision in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). This Court ordered supplemental briefing to address the impact, if any, of *Montgomery* on Mr. Pinckney's case. All briefing, the recommendations of the Magistrate Judge, and the record of this case have been considered carefully.

## STANDARDS OF LAW

### I. Motion to Dismiss

"In proceedings under § 2254, the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009); *see also Brooks v. Clarke*, No. 3:15-CV-13, 2015 WL 1737993, at *3 (E.D. Va. Apr. 16, 2015) (applying the Rule 12(b)(6) standard to a motion to dismiss a habeas petition). "Thus, a motion to dismiss a § 2254 petition under Rule 12(b)(6) tests the legal

4

sufficiency of the petition, requiring the federal habeas court to assume all facts pleaded by the § 2254 petitioner to be true." *Walker*, 589 F.3d at 139 (internal citation omitted).

"In assessing whether the § 2254 petition states a claim for relief, the district court must consider the face of the petition and any attached exhibits." *Id.* (internal citation omitted). A court may consider material from the record of the state habeas proceeding, including affidavits and evidence presented at trial, "without having to convert the Rule 12(b)(6) motion to one for summary judgment under Rule 56(b)." *Id.* "Moreover, a federal court may consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion." *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face." *Brooks*, 2015 WL 1737993, at *4 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009)). In evaluating a Motion to Dismiss, the Court must determine whether the petitioner "came forward with sufficient evidence to survive the Commonwealth's dispositive motion [to dismiss] and advance his claim for a merits determination." *Walker*, 589 F.3d at 139.

## II. Petition for Habeas Relief

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this Court's consideration of a state prisoner's petition for writ of habeas corpus. *Richardson v. Branker*, 668 F.3d 128, 138 (4th Cir. 2012). This Court's decision is also guided by Supreme Court precedent—*Miller v. Alabama*, 132 S. Ct. 2455 (2012) and *Montgomery v. Louisiana*, 136 S. Ct.

718 (2016)—concerning the constitutionality of life imprisonment without parole for juvenile homicide offenders.

A. **Antiterrorism and Effective Death Penalty Act**

The AEDPA standard mandates that a writ of habeas corpus "shall not be granted" for any claim that was adjudicated on the merits in a state court proceeding unless the state court's adjudication was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2015). "A state-court decision is contrary to [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005).

Under the fundamental notions of state sovereignty, the "AEDPA restricts [the] intrusion of state sovereignty by limiting the federal courts' power to issue a writ to exceptional circumstances, thereby helping to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." *Richardson*, 668 F.3d at 138 (internal citation omitted). This Court is "mindful that 'state courts are the principal forum for asserting constitutional challenges to state convictions,' that habeas corpus proceedings are a 'guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal,' and that a federal court may only issue the writ if 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the

Supreme Court's] precedents.'" *Id.* at 132 (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).

"In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015), *as amended* (Apr. 15, 2015) (quoting *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003)). The AEDPA "demands that state court decisions be given the benefit of the doubt," and it is error for a federal court to conduct *de novo* review of habeas claims that were adjudicated on the merits by a state court. *Richardson*, 668 F.3d at 140-41. However, "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review, and does not by definition preclude relief." *Brumfield v. Cain*, No. 13-1433, 2015 WL 2473376, at *6 (U.S. June 18, 2015) (alteration in original). The Supreme Court has emphasized that:

> a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.

*Richter*, 562 U.S. at 102.

Further, the AEDPA "directs a federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims." *Hittson v. Chatman*, No. 14-8589, 2015 WL 786705, at *1 (June 15, 2015) (Ginsburg, J., concurring). "*Richter* makes clear that where the state court's real reasons can be ascertained, the § 2254(d) analysis can and should be based on the actual 'arguments or theories [that] supported . . . the state court's decision.'" *Id.* at *2 (alteration in original).

7

A state's highest court may render an unexplained order or summary dismissal, denial, or affirmance of the trial court decision without explanation. When this occurs, the lower court's decision might be the only "reasoned state judgment rejecting [the] federal claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The reviewing federal court employs a rebuttable presumption that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground" as was articulated by the reasoned state judgment. *Id.* (discussing what has become known as the "look through" rule, which directs reviewing federal courts to "look through" to the last reasoned decision in the state courts); *see also Hittson*, 2015 WL 786705, at *2 (noting that *Richter* did not supersede or overrule *Ylst*).

### B. *Miller*'s Prohibition on Mandatory Life Imprisonment Without Parole for Juvenile Homicide Offenders

In *Miller*, the Supreme Court held that mandatory life imprisonment without parole for those under age eighteen at the time of their crimes violates the constitutional prohibition on cruel and unusual punishment. *Miller v. Alabama*, 132 S. Ct. 2455, 2460 (2012). *Miller*'s holding establishes a two-part inquiry regarding this issue. Courts must first consider whether the state statute at issue mandated a sentence of life imprisonment without parole. A statute providing for mandatory life imprisonment without parole for juvenile offenders is unconstitutional in the wake of *Miller*. *Id.* at 2457-58.

If the Court finds that the state statute at issue does not mandate a life sentence without parole, then the Court must determine whether the trial court undertook a "demanding individualized sentencing" procedure before imposing life without parole upon a juvenile offender. *Id.* at 2467. The trial court should be guided by the premise that "children are different, and . . . those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 2469. A sentencing court should pay particular attention to a juvenile offender's

family background and emotional disturbance because such evidence is "particularly relevant—more so than it would have been in the case of an adult offender." *Id.* at 2467 (internal quotation omitted). A juvenile offender must be treated differently than an adult offender at sentencing. *Id.*

Next, the trial court must "follow a certain process" under which it must "tak[e] account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at 2471, 2467. Specifically, the trial court must consider the following factors: (1) a juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences;" (2) the fact that a juvenile offender may have been charged with and convicted of a lesser offense if not for the incompetencies associated with youth; (3) his or her "vulnerab[ility] . . . to negative influences and outside pressures, including from . . . family and peers;" (4) "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal and dysfunctional;" (5) the fact that "his traits are less fixed and his actions are less likely to be evidence of irretrievabl[e] deprav[ity];" and (6) that "mandatory punishment disregards the possibility of rehabilitation." *Id.* at 2455, 2457, 2467, 2468, 2475.

### C. *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016)

*Montgomery* recognized that the Supreme Court's decision in *Miller v. Alabama* announced a new substantive constitutional rule that is retroactive on collateral review. *Montgomery*, 136 S. Ct. at 732. *Montgomery* clarified the substantive rule articulated in *Miller*, and the procedural component that is necessary to implement *Miller*'s substantive guarantee. *See generally id.*

9

*Montgomery* explained that *Miller* requires sentencing courts to treat juvenile offenders differently than adult offenders, and prohibits mandatory life without parole for a particular category of juvenile offenders whose crimes reflect the "transient immaturity of youth," rather than "irreparable corruption," "permanent incorrigibility," or "such irretrievable depravity that rehabilitation is impossible and life without parole is justified." *Id.* at 733-34 (*Miller* "did more than require a sentencing court to consider a juvenile offender's youth . . . *Miller* determined that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption' and permanent incorrigibility, rather than 'unfortunate yet transient immaturity.'") (quoting *Miller*, 132 S. Ct. at 2469).

*Montgomery* explained further: "*Miller* requires that before sentencing a juvenile to life without parole, the sentencing judge [must] take into account 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *Id.* at 733. The sentencing court must consider "the juvenile's special circumstances in light of the principles and purposes of juvenile sentencing," such as a juvenile offender's "diminished culpability and heightened capacity for change," and the greater need for rehabilitation and the lesser need for retribution, deterrence, and incapacitation in cases involving juvenile offenders. *Id.* at 725-26, 733. The sentencing court must also determine whether the juvenile offender belongs to the class of juvenile offenders whose crimes reflect "the transient immaturity of youth," for whom a sentence of life in prison without parole is unconstitutional under *Miller*. *Id.* at 726.

The *Montgomery* decision also clarified that *Miller* provides for a procedural component to carry out its new substantive rule. Although *Miller* imposes no formal fact-finding requirement regarding a juvenile offender's incorrigibility:

> [a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not. . . . The hearing does not replace but rather gives effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity.

*Id.* at 735 (citing *Miller*, 132 S. Ct. at 2460). *Miller* calls for the implementation of a procedure that allows a juvenile offender to show that he or she falls within the category of persons for whom a sentence of life without parole is no longer permitted. *Id.* at 735-37 (finding that juvenile offenders "must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored.").

## ANALYSIS

Mr. Pinckney submitted several objections to the Magistrate Judge's Report and Recommendation ("R&R"). *See* ECF No. 19. This Court construes the arguments presented as follows. First, Mr. Pinckney objects to the R&R's conclusion that this Court must defer to the state court's decision rather than conduct a *de novo* review of the merits of Mr. Pinckney's claim.

Second, Mr. Pinckney objects to the R&R's affirmation of the state court's conclusion that Virginia's sentencing statutes permit the trial court to exercise discretion to impose a sentence less than life without parole for juvenile homicide offenders. Relatedly, Mr. Pinckney objects to the habeas court's determination that the trial court was aware that it possessed the discretion to impose a sentence other than life in prison at the time of sentencing.

Third, Mr. Pinckney objects to the R&R's finding that "the habeas court correctly identified *Miller*'s holding" and properly considered *Miller*'s impact upon Mr. Pinckney's case "in light of applicable state law." ECF No. 19 at 1 (quoting R&R, ECF No. 18 at 22). The R&R concluded that the habeas court interpreted that "applicable state law" as authorizing the trial

court "to suspend all or part of Pinckney's life sentence in light of mitigating evidence, including [his] age." R&R, ECF No. 18 at 22. Mr. Pinckney objects to this as well. ECF No. 19 at 1.

**I. This Court Overrules Mr. Pinckney's First and Second Objections and Adopts the Related Conclusions of the R&R**

This Court adopts the R&R's conclusion that deferring to the findings of the state habeas court is proper. The Circuit Court for Prince William County reviewed the merits of Mr. Pinckney's constitutional claim. As acknowledged above, the AEDPA "demands that state court decisions be given the benefit of the doubt," and a federal court will not conduct *de novo* review of habeas claims that were adjudicated on the merits by a state court. *Richardson v. Branker*, 668 F.3d 128, 140-41 (4th Cir. 2012). Declining to defer is proper only where there is no state court decision on the merits of the claim presented. *Lenz v. Washington*, 444 F.3d 295, 302 (4th Cir. 2006); *Hudson v. Hunt*, 235 F.3d 892, 895 (4th Cir. 2000).

However, this Court undertakes *de novo* review of those portions of the R&R, or specified findings or recommendations, to which objection is made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Mr. Pinckney objects to the R&R's conclusion that the trial court had discretion to impose a sentence other than life imprisonment without parole. Mr. Pinckney contends that the statute under which he was sentenced, Va. Code Ann. § 18.2-10(a),[2] imposes a sentence of mandatory life imprisonment without parole in violation of *Miller*.

This Court recognizes that the Supreme Court of Virginia has addressed this issue. In *Jones v. Commonwealth*, 763 S.E.2d 823 (Va. 2014), the Supreme Court of Virginia held that Virginia's sentencing scheme does not impose "mandatory" life imprisonment without parole because the trial court has the authority to suspend all or part of the sentence under Va. Code

---

[2] The statute provides that: "[t]he authorized punishments for conviction of a felony are: (a) For Class 1 felonies, . . . [i]f the person was under 18 years of age at the time of the offense . . . the punishment shall be imprisonment for life." Va. Code Ann. § 18.2-10(a)

12

Ann. § 19.2-303.[3] The *Jones* Court reasoned that "[t]he absence of the phrase 'mandatory minimum' in Va. Code Ann. § 18.2-10(a) indicates that the trial judge had some discretion at sentencing." *Jones*, 763 S.E.2d at 825.

However, *Jones* was vacated by the United States Supreme Court and remanded to the Supreme Court of Virginia for further consideration in light of *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). The Supreme Court of Virginia has not yet issued a decision reflecting this consideration.[4]

Mr. Pinckney also argues that the state habeas court incorrectly determined that the trial court was aware at the time of sentencing that it possessed the discretion to impose a sentence other than life without parole. In support of this argument, Mr. Pinckney asserts that:

> (1) the trial court never disagreed with the Commonwealth's argument that it had no discretion; and (2) the trial court did *exactly* what the Commonwealth argued it was permitted to do, that is, sentence Pinckney to life without parole as it was required to do on the capital murder charges, and exercise discretion to set a lower sentence on the non-capital offenses.

ECF No. 19 at 12 (emphasis in original).

---

[3] Va. Code Ann. § 19.2-303 states that: "[a]fter conviction, whether with or without jury, the court may suspend imposition of sentence or suspend the sentence in whole or in part."

[4] The issue of whether Virginia's statutory sentencing scheme imposes mandatory life without parole upon juvenile homicide offenders presents a close question. Although the language of the Virginia sentencing statute at issue (Va. Code Ann. § 18.2-10(a)) is similar to the language of the Arkansas and Alabama statutes at issue in *Miller* (which were found to have imposed "mandatory" life without parole), Virginia's statutory sentencing scheme may be distinguishable. Applicable Virginia state law permits a sentencing court to suspend all or part of a sentence imposed, and permits the state court to impose suspended sentences upon juvenile offenders. *See* Va. Code Ann. §§ 19.2-303, 16.1-272(a)(1)(iii); *see also Jones*, 763 S.E.2d at 825 ("Nothing restrict[s] [the] application [of Va. Code Ann. § 19.2-303] to a certain type of sentence"). In contrast, Arkansas law does not permit the imposition of suspended sentences for capital murder or treason. Ark. Code Ann. § 5-4-104(e)(1)(A). In Alabama, suspended sentences are limited to particular types of sentences. Ala. Code Ann. § 15-22-50.
However, the United States Supreme Court included Virginia in its list of twenty-nine jurisdictions that impose a mandatory term of life without parole for juveniles in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Miller*, 132 S. Ct. at 2471, 2472, n.15 & 16. If the Supreme Court of Virginia finds, in light of *Montgomery*, that the applicable state statutes impose mandatory life imprisonment without parole upon juvenile homicide offenders, *Miller's* prohibition must be swiftly applied here.

Mr. Pinckney's contention that the trial court was unaware at the time of sentencing of its discretion to impose a sentence other than life imprisonment without parole is unsupported. The trial court never asserted that it was required or mandated to impose a sentence of life in prison without parole. Rather, the trial judge—after discussing the court's consideration of the presentence report and the psychological evaluation of Mr. Pinckney—stated, "I think the appropriate sentence in this case on the capital murder charges is to sentence you to life without parole." Sent. Tr., ECF No. 2-1 at 26.

## II. This Court Sustains Mr. Pinckney's Third Objection and Clarifies that a Trial Court Must Comply with *Miller* when Sentencing a Juvenile Homicide Offender

Mr. Pinckney also objects to the state habeas court's conclusion that the trial court correctly identified *Miller*'s holding and properly applied it to the facts of his case at sentencing. *See* ECF No. 19 at 1; *see also* ECF No. 18 at 22. In light of *Montgomery*'s clarification of the process required by *Miller* before a juvenile homicide offender can be sentenced to life imprisonment without parole, this Court concludes that the trial court in this case clearly failed to make the constitutionally required individualized determination.

The state habeas court concluded that the trial court "followed *Miller*'s command by weighing Pinckney's age, offense, criminal history, and mitigating evidence when determining the appropriate sentence for his capital murder convictions." ECF No. 18 at 28. This conclusion referred to the following reasons: (1) the sentencing court reviewed the presentence report, which included factors related to the nature and circumstances of the offense and the characteristics of Pinckney (including his age); (2) the sentencing court considered Mr. Pinckney's family background, upbringing, and "the way he was raised;" (3) the sentencing court took into account Mr. Pinckney's experience in the juvenile court system; and (4) the sentencing court considered

the nature of the offense and concluded that the offense was "almost incomprehensible and . . . tragic" because Mr. Pinckney killed "two extraordinary people" in order to avoid "a juvenile conviction for burglary." ECF No. 2-1 at 9-10, 25-26.

As noted above, this Court must grant Mr. Pinckney's habeas petition if the decision of the state court is either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Affording deference to the state court, this Court concludes that the state court determination involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

The "unreasonable application prong of § 2254(d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (internal citation omitted). "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Id.* "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous . . . [it] must have been objectively unreasonable." *Id.* at 520-21.

The state habeas court determined that "*Miller* announced a new rule governing sentencing of juveniles convicted of capital murder," which was applicable to Mr. Pinckney's case. ECF No. 2, Ex. C at 3. The state habeas court concluded that Mr. Pinckney's life sentence did not run afoul of *Miller* because the sentencing court deemed "it appropriate to impose life

sentences for each capital murder conviction without suspend[ing] any portion of the sentences" only after taking into account "Pinckney's age, the circumstances of the crime, his criminal history, . . . his mitigating evidence," and the presentence report. *Id.* at 5-6 (noting that the court "simply declined to exercise its discretion to commute or suspend the sentence in light of all the evidence in Pinckney's case").

This Court is compelled to find that the state court misapplied the governing legal principles in *Miller* as clarified by *Montgomery*. Specifically, the trial court failed to consider the two key elements required by *Miller*. First, the trial court gave no indication that it was guided by the fundamental principle "require[d] before sentencing a juvenile to life without parole," specifically, "'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *Montgomery*, 136 S. Ct. at 733 (quoting *Miller*, 132 S. Ct. at 2469). Second, the trial court failed to consider whether Mr. Pinckney's crime reflected "'irreparable corruption'" (thereby permitting application of a life sentence), as opposed to "'unfortunate yet transient immaturity.'" *Id.* at 734 (quoting *Miller*, 132 S. Ct. at 2469).

In *Miller*, the United States Supreme Court emphasized the fundamental differences between children and adults, and held that the sentencing procedure for juveniles must take explicit account of those differences:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the . . . offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a

16

> plea agreement) or his incapacity to assist his own attorneys. *See, e.g., Graham*, 560 U.S. at 78 ("[T]he features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings"); *J.D.B. v. North Carolina*, 564 U.S. ——, ——, 131 S. Ct. 2394, 2400-01 (2011) (discussing children's responses to interrogation). And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

132 S. Ct. at 2468.

As this Court reviewed in *LeBlanc v. Mathena*, the United States Court of Appeals for the Fourth Circuit has embraced the foundational principle of *Miller*: children must be treated differently than adults at sentencing. *See, e.g., Johnson v. Ponton*, 780 F.3d 219, 221-22 (4th Cir. 2015) (judgment vacated on other grounds) (recognizing that the "concern motivating" the Supreme Court's decision in *Miller* was that the "sentencing scheme" employed by the lower court "preclude[d] consideration of how children are different from adults"); *id.* at 222 (quoting the Supreme Court's teaching that "it is the odd legal rule that does not have some form of exception for children"); *United States v. Howard*, 773 F.3d 519, 532 (4th Cir. 2014) (holding that a district court's sentence failed to appreciate that the defendant was a juvenile when he committed three predicate convictions); *United States v. Hunter*, 735 F.3d 172, 174 (4th Cir. 2013) (recognizing that "children are constitutionally different from adults for purposes of sentencing due to their diminished culpability and greater prospects for reform") (quoting *Miller*, 132 S. Ct. at 2464)). "Youth is a mitigating factor derive[d] from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." *Howard*, 773 F.3d at 532 (alteration in original) (quoting *Roper v. Simmons*, 543 U.S. 551, 570 (2005)). *See also LeBlanc v. Mathena*, No. 2:12cv340, 2015 WL 4042175, at *14 (E.D. Va. July 1, 2015).

17

Other state courts within the Fourth Circuit have recognized that the Constitution requires more than mere consideration of youth at sentencing. *See, e.g., Aiken v. Byars*, 765 S.E.2d 572, 543 (S.C. 2014) ("[A]lthough some of the hearings touch on the issues of youth, none of them approach the sort of hearing envisioned by *Miller* where the factors of youth are carefully and thoughtfully considered."). In *Aiken v. Byars*, the Supreme Court of South Carolina held that *Miller* requires the sentencing authority to "'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *Id.* at 544 (quoting *Miller*, 132 S. Ct. at 2468). The court recognized that *Miller* articulated a specific framework invoking several factors[5] that a sentencing court must consider before imposing a sentence of life imprisonment without parole upon a juvenile homicide offender—"*Miller* does more than ban mandatory life sentencing schemes for juveniles; it establishes an affirmative requirement that courts fully explore the impact of the defendant's juvenility on the sentence rendered." *Id.* at 577.

A sentencing scheme that fails to account for the differences between children and adults violates *Miller*'s foundational principle and is an unreasonable application of federal law. *See Wiggins*, 539 U.S. at 520. The record from Mr. Pinckney's sentencing hearing reveals that the sentencing court did not consider: (1) Mr. Pinckney's failure to appreciate risks and

---

[5] The Supreme Court of South Carolina recognized that *Miller* requires a sentencing court to consider the following factors: "(1) the chronological age of the offender and the hallmark features of youth, including immaturity, impetuosity, and failure to appreciate the risks and consequence; (2) the family and home environment that surrounded the offender; (3) the circumstances of the homicide offense, including the extent of the offender's participation in the conduct and how familial and peer pressures may have affected him; (4) the incompetencies associated with youth—for example, [the offender's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the offender's] incapacity to assist his own attorneys; and (5) the possibility of rehabilitation." *Id.* at 544 (citing *Miller*, 132 S. Ct. at 2468).

consequences;[6] (2) the effect of peer pressure and the undue influence of Mr. Pinckney's older girlfriend; or (3) the possibility of rehabilitation.[7] ECF No. 22 at 10-12.

The sentencing court considered Mr. Pinckney's presentence report (which provided extensive information about Mr. Pinckney's personal background), but there was no indication that this consideration differed from the consideration that would be given to an adult offender. In considering the nature and circumstances of the offense, the sentencing court focused on the impact of the crime on the victims. There was no indication that the court contemplated whether the crime reflected Mr. Pinckney's transient immaturity as a function of his youth.

The Government concedes that *Montgomery* clarified that "the state court ha[s] to allow for a hearing at which the juvenile [can] present and the court [can] consider the *Miller* factors before imposing sentence." ECF No. 23 at 8. Mr. Pinckney did not receive the kind of hearing required by *Miller* before being sentenced to life imprisonment without parole. The trial court failed to consider the "mitigating qualities of youth," as required by *Miller*, prior to imposing a sentence of life imprisonment without parole. Accordingly, this Court is compelled to grant Mr. Pinckney's Petition for Writ of Habeas Corpus, and orders a new sentencing hearing that complies with *Miller* and the constitutional requirements that decision imparts.

## CONCLUSION

The Magistrate Judge's Report and Recommendation (ECF No. 18) is **ADOPTED IN PART AND OVERRULED IN PART**. For the aforementioned reasons, the state court unconstitutionally failed to properly consider Mr. Pinckney's youth and its "attendant

---

[6] Mr. Pinckney argues in part that his commission of a double murder for the purpose of avoiding thirty days in juvenile detention for burglary underscores his "transient immaturity" and his inability to appreciate risks and consequences. ECF No. 22 at 10, n.9.

[7] Mr. Pinckney has obtained his high school diploma and an Associate's Degree in paralegal studies while incarcerated, suggesting an amenability to rehabilitation. ECF No. 22 at 11.

19

characteristics" before imposing a sentence of life imprisonment without parole. *Miller v. Alabama*, 132 S. Ct. 2455, 2471 (2012). Because the state court's decision involved an unreasonable application of clearly established federal law, as set forth in *Miller*, Mr. Pinckney's Petition (ECF No. 1) is **GRANTED**, and Respondent's Motion to Dismiss (ECF No. 13) is **DENIED**. This case is **REMANDED** for resentencing in accordance with the principles and standards enunciated in *Miller*.

**IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge
Arenda L. Wright Allen
United States District Judge

Sept 23rd, 2016
Norfolk, Virginia